1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

UNITED STATES OF AMERICA,

                          Plaintiff,

        v.

CHARLES JASON BUTCHER,

                          Defendant.

CASE NO. CR17-5191 BHS

ORDER DENYING
DEFENDANT'S MOTION FOR
COMPASSIONATE RELEASE
AND GRANTING MOTIONS FOR
LEAVE TO FILE OVERLENGTH
BRIEFS

This matter comes before the Court on Defendant Charles Butcher's ("Butcher")

motion for compassionate release, Dkt. 24, motions for leave to file overlength briefs,

Dkts. 25, 32, and the Government's motion for leave to file overlength brief, Dkt. 30. The

Court has considered the pleadings filed in support of and in opposition to the motions

and the remainder of the file and hereby denies the motion for compassionate release and

grants the motions for leave for the reasons stated herein.

## I.   FACTUAL & PROCEDURAL BACKGROUND

On May 12, 2017, Butcher pled guilty to a single-count Information charging him

with Aggravated Sexual Assault of a Minor Under 12 in violation of 18 U.S.C.

§§ 2241(c) and 7. Dkt. 6. As part of the plea agreement, the parties agreed to recommend

ORDER - 1

a custodial sentence between 60 and 121 months. Dkt. 5 at 5. On November 17, 2017, Judge Ronald B. Leighton[1] sentenced Butcher to serve 97 months in custody followed by a 10-year term of federal supervised release. Dkts. 22, 23. Butcher is currently housed at Federal Correctional Institute Terminal Island in San Pedro, California ("FCI Terminal Island") and is projected to be released on November 15, 2024.

On October 5, 2020, Butcher filed a motion for compassionate release to reduce his sentence from custody at FCI Terminal Island to home confinement or custody at a Residential Reentry Center, Dkt. 24, and a motion for leave to file overlength brief, Dkt. 25. On October 13, 2020, the Government filed a motion for leave to file overlength response. Dkt. 30. On October 14, 2020, the Government responded. Dkt. 31. On October 23, 2020, Butcher replied, Dkt. 33, and filed a motion for leave to file overlength reply, Dkt. 32.

## II.   DISCUSSION

**A.**   **Motions to File Overlength Briefs**

As a preliminary matter, the Court grants Butcher's unopposed motions, Dkts. 25, 32, and the Government's unopposed motion, Dkt. 30, to file briefs in excess of the twelve-page limitation imposed by Local Criminal Rule 12(b)(5) of the Rules of the United States District Court for the Western District of Washington.

---

[1] As Judge Leighton has retired from the federal bench, this case was reassigned to this Court on October 5, 2020. Dkt. 27.

ORDER - 2

**B.      Motion for Compassionate Release**

Pursuant to 18 U.S.C. § 3582(b), a judgment of conviction that includes a sentence of imprisonment "constitutes a final judgment and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (internal quotations omitted). Those limited circumstances are provided under 18 U.S.C. § 3582(c)(1)(A)(i). Effective December 21, 2018, the First Step Act of 2018 amended § 3582(c)(1)(A) by adding a provision that allows prisoners to directly petition a district court for compassionate release:

> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) extraordinary and compelling reasons warrant such a reduction;
> ***
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

18 U.S.C. § 3582(c)(1)(A). Accordingly, a court may reduce a sentence upon motion of a defendant provided that: (1) the inmate has either exhausted his or her administrative appeal rights of the Bureau of Prison's ("BOP") failure to bring such a motion on the inmate's behalf or has waited until 30 days after the applicable warden has received such a request; (2) the inmate has established "extraordinary and compelling reasons" for the

1  requested sentence reduction; and (3) the reduction is consistent with the Sentencing

2  Commission's policy statement. *See id*.

3      The Sentencing Commission's policy statement referenced in 18 U.S.C.

4  § 3582(c)(1)(A)(i) provides, in relevant part:

5          [T]he court may reduce a term of imprisonment (and may impose a
        term of supervised release with or without conditions that does not exceed
6        the unserved portion of the original term of imprisonment) if, after
        considering the factors set forth in 18 U.S.C. § 3553(a), to the extent that
7        they are applicable, the court determines that—
            (1)(A) Extraordinary and compelling reasons warrant the reduction;
8        ***
            (2) The defendant is not a danger to the safety of any other person or
9        to the community, as provided in 18 U.S.C. § 3142(g); and
            (3) The reduction is consistent with this policy statement.
10
   United States Sentencing Guidelines ("USSG") § 1B1.13.
11
   **1. Extraordinary and Compelling Reasons**
12
13      Recently, Judge Thomas S. Zilly has provided a non-exhaustive list of factors

   federal courts have considered in determining whether a defendant has extraordinary and
14
   compelling reasons for compassionate release in the context of COVID-19:
15
16          (i) whether the inmate is at higher risk because of his or her age and/or race,
        *see United States v. Young*, No. CR19-5055 BHS, 2020 WL 2614745, at *3
17        (W.D. Wash. May 22, 2020); (ii) whether the inmate has one or more,
        medically-documented, chronic health conditions that render him or her
18        more vulnerable to COVID-19, *see United States v. Locke*, No. CR18-0132
        RAJ, 2020 WL 3101016, at *4 (W.D. Wash. June 11, 2020) (observing that
19        the movant's health issues were "not merely self-diagnosed," but rather
        "medically documented and verified"); *United States v. Rodriguez*, No.
20        2:03-cr-00271-AB-1, 2020 WL 1627331, at *7 (E.D. Pa. Apr. 1, 2020)
        (inmate with type 2 diabetes, obesity, hypertension, and liver abnormalities
21        was in a "higher risk category"); (iii) the fatality rate for individuals with
        similar health conditions as compared with the overall fatality rate for
        COVID-19, *see id.* (summarizing COVID-19 fatality rates); *United States*
22        *v. Pippin*, No. 16-0266, 2020 WL 2602140, at *1 (W.D. Wash. May 20,

ORDER - 4

2020) (granting a motion brought by a defendant suffering from pancytopenia, which is associated with an "over fivefold enhanced risk of severe COVID-19"); (iv) whether the inmate has previously tested positive for the coronavirus that causes COVID-19 and, if so, whether the inmate suffers from any long-term effects of the disease, *see United States v. Reynolds*, No. 2:18-cr-00131-RAJ, 2020 WL 3266532, at *3–4 (W.D. Wash. June 17, 2020) (denying a motion for compassionate release brought by an inmate who recovered from and was "not suffering from any reported lingering symptoms" related to COVID-19); and (v) whether the inmate's release is expected to reduce the risk of him or her contracting COVID-19, see *United States v. Sandoval*, No. CR14-5105RBL, 2020 WL 3077152, at *5 (W.D. Wash. June 10, 2020) (declining to release a defendant to a situation that "would likely place him at greater risk").

*United States v. Grubbs*, No. CR16-228 TSZ, 2020 WL 3839619, at *2 (W.D. Wash. July 8, 2020).

The Court finds these factors useful, instructive, and consistent with the analysis of extraordinary and compelling reasons the Court has engaged in with recent COVID-19 cases. *See, e.g.*, *Young*, 2020 WL 2614745 at *3 (a 64-year-old African American defendant with hypertension and chronic kidney disease presented extraordinary and compelling reasons); *United States v. Lint*, No. CR18-5152 BHS, 2020 WL 4698815, at *2 (W.D. Wash. Aug. 13, 2020) (a defendant housed at a federal correctional institution that had only two inmates infected with COVID-19 did not present an extraordinary and compelling reason); *United States v. Gray*, No. CR16-5600 BHS, 2020 WL 5759792, at *2–3 (W.D. Wash. Sept. 28, 2020) (a relatively young female defendant with a Body Mass Index of 32.1, while obese, did not present sufficient evidence of extraordinary and compelling reasons without additional evidence of other risk factors). The Court has

1  discretion to consider the factors provided by Judge Zilly in determining whether Butcher

2  has extraordinary and compelling reasons.[2]

3        Here, Butcher argues that his chronic medical conditions are extraordinary and

4  compelling reasons because they place him at a higher risk of severe illness from

5  COVID-19; he has a Body Mass Index ("BMI") of 34.1, suffers from hypertension and

6  cirrhosis of the liver, and is nearly 50 years old. Dkt. 24-3, Declaration of Dr. Marc Stern,

7  ¶ 6. The CDC recognizes that obesity, i.e., having a BMI between 30 and 40, increases

8  the risk of severe illness from COVID-19 and that hypertension and liver disease—

9  cirrhosis in particular—may increase the risk of severe illness.[3] The CDC also recognizes

10  that severe illness from COVID-19 increases with age and makes clear that older

11

12

13

14

---

15      [2] In the application of USSG § 1B1.13, the Commission has described three categories of potentially "extraordinary and compelling reasons," namely medical condition, age, and family

16  circumstances, *see* USSG § 1.B1.13 cmt. n.1(A)–(C), as well as a "catch-all" provision, *id.* cmt. n.1(D), which "opens the door" to considering factors other than those specifically enumerated,

17  *United States v. McPherson*, 454 F. Supp. 3d. 1049 (W.D. Wash. 2020). However, USSG § 1B1.13 has not been updated since the passage of the First Step Act of 2018, and district courts have largely found that the Commission's list of extraordinary and compelling reasons is not

18  binding, but rather helpful guidance. *See United States v. Almontes*, No. 3:05-cr-58 (SRU), 2020 WL 1812713, at *3 (D. Conn. Apr. 9, 2020) (providing a list of cases from around the country addressing whether the Commission's list is binding). The Court therefore concludes that, given

19  the "catch-all" provision and the non-binding status of the comments to USSG § 1B1.13, it has discretion to construe the meaning of extraordinary and compelling reasons. *See Grubbs*, 2020

20  WL 3839619, at *2 n.2.

21      [3] Center for Disease Control and Prevention, *People with Certain Medical Conditions,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-

22  conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html (last updated Oct. 16, 2020).

individuals have an increased risk of severe illness, but makes clear that people in their 50s have a lower risk for severe illness than individuals in their 60s or 70s.[4]

The Court finds that Butcher has established extraordinary and compelling reasons to warrant a reduction in his sentence. While the Court has previously found that obesity alone does not constitute an extraordinary and compelling reason, *see Gray*, 2020 WL 5759792, at *2–3, Butcher has provided evidence that he suffers from additional chronic medical conditions that place him a higher risk of severe illness from COVID-19. Indeed, the Government concedes that Butcher's obesity is an actual risk factor for COVID-19 and that he has presented an extraordinary and compelling reason based on his obesity. Dkt. 31 at 9, 13. Butcher's obesity is recognized by the CDC as a medical condition that increases the risk of severe infection, and his other underlying, chronic medical conditions only add to that risk. Moreover, Butcher is housed at FCI Terminal Island, which has six active COVID-19 cases, ten inmate deaths, and 575 inmates who have recovered from COVID-19.[5]  The Court therefore finds that Butcher has established extraordinary and compelling reasons to warrant a reduction of his sentence.

## 2. Public Safety

Once a defendant has established that extraordinary and compelling reasons exist to warrant release or a reduction in sentence, the defendant must also show that they no

---

[4] Center for Disease Control and Prevention, *Older Adults*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/older-adults.html (last updated Sept. 11, 2020).

[5] Bureau of Prisons, *COVID-19 Update*, https://www.bop.gov/coronavirus/ (last visited Oct. 30, 2020).

longer present a danger to the safety of any other person or to the community. USSG § 1B1.13(2). In making this determination, the Court looks to the nature and circumstances of Butcher's underlying offense, the weight of evidence against him, his history and characteristics, and the nature and seriousness of the danger his release would pose to any person or the community. *See* 18 U.SC. § 3142(g).

The Court finds that Butcher has carried his burden to establish that he is not a danger to the safety of any other person or the community if under court supervision upon release. The Court acknowledges that the crime Butcher committed was extremely serious and will have a lasting, detrimental impact on his victims, but the crime occurred nearly two decades ago, and Butcher has no other history of violence. *See* Dkt. 24 at 14. Additionally, Dr. Bill Lennon conducted a psychosexual evaluation of Butcher and concluded that Butcher presented a very low risk to reoffend so long as he maintains sobriety and that the underlying offense was an isolated incident. PSR, ¶¶ 36–37. Moreover, Butcher was not deemed a danger to the community while his case was pending and was released on bond pending his sentencing. *See* Dkts. 6, 8. Therefore, having considered the factors set forth by 18 U.S.C. § 3142(g), the Court finds that Butcher would not pose a danger to the safety of any other person or to the community upon release.

**3.  18 U.S.C. § 3553(a) Factors**

"Having found that that [the defendant's] age and health constitute extraordinary and compelling reasons warranting compassionate release and that he poses no danger to others or to the community, the Court must now consider the factors set forth in 18

U.S.C. § 3553(a)." *United States v. Cosgrove*, CR15-230-RSM, 2020 WL 1875509, at *4 (W.D. Wash. Apr. 15, 2020) (citing 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13). The relevant factors include (i) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (ii) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to adequately deter criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct"; (iv) the sentencing guidelines; and (iv) "the need to provide restitution to any victims of the offense." 18 U.S.C. § 3553(a).

The Court applies the § 3553(a) factors in considering a defendant's sentence, and the Court's consideration of these factors has changed little since Butcher's sentencing. Indeed, the majority of factors weigh against compassionate release. For example, sexual assault is a horrendous act that has substantial adverse effects on the victims and their families and support systems, and releasing Butcher would clearly frustrate the purpose of deterrence, both general and specific. A release now would not adequately take into consideration the seriousness of the offense or promote respect for the law. While it is accurate that Judge Leighton, when considering the need for just punishment, could not have contemplated the more difficult conditions of confinement that have been necessitated by the COVID-19 pandemic, this factor weighs against release because

1    Butcher has only served a little more than a third of his custodial sentence, and release

2    would result in unwarranted disparity of his sentence. Finally, the Court concludes that,

3    based upon the information in the record, Butcher's needs for medical care are being

4    reasonably met at FCI Terminal Island.

5         For these reasons, the Court denies Butcher's motion for compassionate release.

6                       **III.  ORDER**

7         Therefore, it is hereby **ORDERED** that Butcher's motion for compassionate

8    release, Dkt. 24, is **DENIED** without prejudice, Butcher's motions for leave to file

9    overlength briefs, Dks. 25, 32, are **GRANTED**, and the Government's motion for leave

10   to file overlength response, Dkt. 30, is **GRANTED**.

11        Dated this 2nd day of November, 2020.

12

13

14                      BENJAMIN H. SETTLE
                        United States District Judge

ORDER - 10